### SAN ANTONIO SEWER PIPE COMPANY v. HENRY NOLL.

Decided November 23, 1904.

**1.—Contributory Negligence—Assumed Risk.**

Evidence considered and held to show that the loss of plaintiff's eye was due to his own contributory negligence and risk assumed by him in continuing to use a dull chisel in chipping off and squaring the corners of a piece of cast iron, knowing that it did not work well after becoming dull and required stronger blows from the hammer.

**2.—Master and Servant—Duty to Warn Servant of Danger.**

It appearing from the testimony that plaintiff had quit work when the chisels he was using became dull and reported that fact to the foreman and was told by him to have them sharpened, no charge submitting defendant's duty to warn plaintiff of the danger of working with a dull chisel was called for.

**3.—Natural Laws—Notice.**

A person of mature years and ordinary sense must take notice of the result of natural laws upon conditions known and obvious to him, and especially upon those of his own producing.

Error from the District Court of Bexar. Tried below before Hon. A. W. Seeligson.

*P. H. Swearingen, Houston Bros.,* and *R. J. Boyle,* for plaintiff in error.

*T. M. Paschal* and *Joseph Ryan,* for defendant in error.

JAMES, CHIEF JUSTICE.—Defendant in error sued for damages sustained for the loss of his left eye in defendant's service and obtained a judgment for $2,000. The issues upon which the case was submitted were: First, negligence of defendant in furnishing plaintiff with a chisel that was soft and dull, and directing him to use it; second, contributory negligence of plaintiff in the use of the chisel; third, assumed risk.

The first assignment of error is the court's refusal to grant a new trial, because the verdict was unsupported by the evidence, in (among other things) that there was no evidence of any negligence of defendant; that the undisputed evidence showed that the risk to plaintiff's eye from flying chips was open and obvious to him; that he was 25 years old,

with more than ordinary knowledge of machinery, and knew the risk from driving iron filings; that the undisputed evidence showed that the risk of chips, cut out by plaintiff with a chisel, flying into his eye, was one ordinarily incident to the business and assumed by him; that the undisputed evidence shows that the injury was caused by plaintiff's own contributory negligence in striking the blow against the chisel with the force used; that the undisputed evidence shows that the injury was caused by plaintiff's own contributory negligence in continuing to use the chisel and striking it with the force used after discovering that the chisel was dull; that the undisputed evidence shows that the condition of the chisel was not the proximate cause of the chip flying and injuring plaintiff.

As we are convinced from examination of plaintiff's own testimony that he was guilty of negligence proximately contributing to his injury, or that his injury proceeded as the natural result from causes produced by himself, and necessarily known and obvious to him, and therefore from an assumed risk, or both, the assignment will be sustained.

Plaintiff was 25 years of age, and a well driller by regular occupation. For about two years before the accident he was running the press for the sewer pipe company. Previous to this about two years he had worked for it as a common laborer. "Sometimes as a common laborer I worked around the press and sometimes I would be working at something else in the yard." A part of the press machinery known as a clutch became worn and had to be repaired. The clutch consisted of a cylinder of cast iron, which ran the feeder of the press and had become so worn at the corners that it would not work, and had to be chiseled out in order to make the corners clutch. Plaintiff says he reported to his foreman that it had worn out and needed fixing, and told him exactly what was the matter with it; that the corners had worn round and the clutches would not hold. The foreman told him to fix the clutch. "He told me to square it up; to see if I could square it up. I knew the only way to fix it would be to square it up—make the corner sharp. I thought I could get the hacksaw and cut through the corners and then break it out that would square the clutch. I didn't use the hacksaw because it was broken. I asked the foreman what I should do with it, that the hacksaw was broken, and he told me he thought a chisel would work on there. I thought it was better to do work with a hacksaw if I could get one; the foreman told me I would have to do it with a chisel. I knew I could chip it off with a chisel, and I went and got a chisel and found it wouldn't work. There were two or three chisels in the shop; I don't know how many there were. They were lying around in the shop and I picked them up and went to work with them and found they were too soft. No one told me they were too soft. I thought of it myself because I couldn't make any headway in that piece of casting. I was trying to chip that corner down so that it would get square again. I had the clutch fastened in a vice, and then I went to work on it while it was clutched in the vice this way [illustrating by standing immediately in front of the clutch holding the chisel with left hand against the edge of the clutch and striking chisel with hammer]. I selected the hammer. I struck the head of the

chisel with the hammer to cut a piece of iron away. I wanted to make a start so I cut all I could. When I hit the chisel with the hammer I expected a little piece of that iron to come out. It didn't chip out as fast as I expected with the first chisel so I put the first chisel down. I chipped out a little bit with the first chisel, then I picked up another and hit it the same way for the same purpose." It appears from his testimony that soon afterward he went to his foreman and asked him for a chisel and told him that the chisels he had he could not do anything with, they were so dull, and the foreman told him to go to the engineer, a Mr. Anderson, and get him to sharpen one for him. That he went to Anderson and told him that the boss said for him to fix the chisel, and he (Anderson) said he was too busy and couldn't; that he thought the carpenter had a chisel that was all right. It was about noon, and after dinner plaintiff says he went to get the chisel the carpenter had, found it and worked with it a little while (ten or fifteen minutes), when this chip flew into his eye.

With regard to this chisel, plaintiff stated that it looked to be all right; it looked to be sharp. "I could tell by the way the chisel cut that it was dull. I was working with it ten minutes [in another place he stated about fifteen minutes] chipping off pieces of iron. It was chipping off at first all right as long as I had a good edge on it. I wore the edge off; it got dull by work. I knew· I could tell when it was getting dull by working on it, and because it was dull and working soft I hit hard. The piece of iron that flew into my eye flew out of the casting, not out of the chisel nor out of the hammer. . . It got dull and wouldn't work like I thought it ought to, so I hit harder than usual to try and make it do work better, and that is why the sliver flew and hit me in the eye. . . . I would chip out a little piece of iron—that is what I hit it for. I don't know what angle I held the chisel at. I knew if I held the chisel that way, a little piece of iron would chip off, and it did, and it had been doing it all the time I was striking. I always tried to hit so hard that a chip would fly off. . . . If I had had a good, sharp chisel I don't think I would have had to hit so hard, and stand there close up to it."

It appears that the chip in question flew out and rebounded from the internal surface of the clutch and struck plaintiff's eye.

Plaintiff, however, testified that he did not know the chips would fly with a good deal of force when he struck the chisel; that he didn't know they would bounce back. "I didn't know if these little chips would hit on iron surface that they would come back. I never saw any before." He also stated that he had never had any experience in that kind of work.

Much is said in appellee's brief about appellant's duty to have warned plaintiff as to the danger which attended his working with a dull chisel. The trial judge did not submit any such form of negligence and was not requested to do so. Such a theory for plaintiff's recovery would have been without support in the evidence. From plaintiff's own version of the transaction, the foreman not only did not know that plaintiff was pursuing the work with a dull chisel, but had every reason to suppose that plaintiff was not doing so. Plaintiff had quit the work when the chisels he first used became dull, and reported the fact to his foreman.

He was instructed by the foreman to go to Anderson, the engineer, and get one sharpened or fixed. Plaintiff was working alone, away from the view of the foreman, who had no knowledge nor reason to suspect that he would work with a dull tool, having just quit working with such tools on account of their dullness. The duty to warn a servant exists only when the work which the servant is put to is attended with great and unusual danger. The duty proceeds upon the theory that the master in engaging the servant in a particular work which is dangerous exposes him to constant risk of serious injury, of which the master is or ought to be aware and the servant ignorant, and hence the omission of the master to take reasonable precaution to guard the servant against such dangers is negligence. San Antonio Gas Co. v. Robertson, 93 Texas, 507. It is evident from the testimony in this record that there was no danger in squaring this clutch with the use of a chisel that was sharp, and as the foreman did not know, or have reason to think, that plaintiff would use a dull chisel, and could only have supposed, from plaintiff's course in the matter, that he would not do so, we fail to see how the duty of warning plaintiff against the danger involved in the use of a dull tool in this work devolved on the master.

We think we need not consider the case in the aspect of the chisel being furnished by Anderson as the act of a fellow servant. In our view of plaintiff's relation to assumed risk, we may take it for granted that it was furnished by the master. The only defect in it which the evidence indicates was that it was not sufficiently tempered to effectively resist its tendency to become dull.

It was not dull when plaintiff began to use it. He admits, "It was chipping off all right at first, as long as I had a good edge on it." It became defective in plaintiff's hands from use. He states: "I wore the edge off; it got dull by work. I knew I could tell when it was getting dull by working on it." He also knew the effect of working with it in that condition. He stated: "And because it was dull and working soft I hit hard. . . . It got dull and wouldn't do the work as I thought it ought to do it, so I hit harder than usual to try to make it do the work better, and that is why the sliver flew and hit me in the eye."

In the first place we can not see any ground for negligence on the part of the master in the above facts, unless it be the failure to warn plaintiff of the danger in performing this work with a dull tool and in striking it with violence, for plaintiff knew that the chisel was becoming dull, and knew when it became dull, and knew that the condition required heavy blows upon the chisel, as he was administering them himself. We have already disposed of the question of warning; as the master had no knowledge or reasonable expectation that plaintiff would persist in doing the work with a dull instrument, hence it was not such a case as required the master to warn him in reference to that method of doing the work.

In the second place, the manner of doing the work with the chisel was entirely of plaintiff's selection. His testimony makes it clear that he knew the difference between working with a sharp chisel and one with the edge worn off of it. One chipped off the iron readily, the other

required strong blows to produce any result. When the tool became dull, he went on working with it, instead of having it sharpened or getting a sharp one, thus voluntarily adopting a method of work which necessitated knocking the chips off with force and violence. Certainly, under these circumstances, he assumed the risk of any danger to himself which resulted naturally from violently knocking chips off with the dull chisel. Knowing that the chisel was dull, as it grew dull in his own hands from use; knowing that he was dealing heavy blows to knock off the chips, he was necessarily charged with knowledge that the chips, so violently thrown off, were apt to strike him, or rebound from the surface of the clutch and strike him, and therefore he assumed such risk. The fact that plaintiff was inexperienced in such work counts for nothing. He was a man who had reached mature years, and any such person with ordinary sense must take notice of the result of natural laws upon conditions known and obvious to him, and especially upon those of his own producing. Cotton Oil Co. v. Shaw, 27 Texas Civ. App., 65.

We conclude that plaintiff necessarily having knowledge of the existence of the obvious conditions which led to his injury, and the chip having been thrown off with sufficient force to rebound and strike him as the natural result of those conditions, he was charged with knowledge of the danger and his injury was due to a risk which he assumed.

The facts upon which the opinion is based being the testimony of plaintiff himself, the judgment of the lower court is reversed and judgment is rendered in favor of plaintiff in error.

*Reversed and rendered.*

Writ of error refused.